(67 South. 345)

No. 20699.

THOMAS et al. v. BOARD OF SCHOOL DIRECTORS OF PARISH OF WEBSTER.

(Jan. 11, 1915. Rehearing Denied Feb. 8, 1915.)

*(Syllabus by the Court.)*

1. STATUTES ⬤109 — VALIDITY—SINGLENESS OF OBJECT.

A statute which deals with several branches of one subject does not violate the constitutional provision that it shall embrace but one object.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 121–134; Dec. Dig. ⬤107.]

2. STATUTES ⬤68 — LOCAL AND SPECIAL LAWS—CONSTITUTION—OPERATION.

Referring to local or special laws, articles 48–50 of the Constitution have no application to a statute which defines and relates to every subdivision of the state except the city of New Orleans.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 70; Dec. Dig. ⬤68.]

3. STATUTES ⬤109 — TITLE AND SUBJECT-MATTER.

Where the object of an act is otherwise expressed in its title, it is not necessary that the title should expressly declare its object to be to put into effect the article of the Constitution in pursuance of which the statute was enacted.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 136–139; Dec. Dig. ⬤109.]

4. SCHOOLS AND SCHOOL DISTRICTS ⬤103— SPECIAL TAX ELECTION—TAXPAYERS' PETITION—RECORDING.

It is not required that the petition of the taxpayers of a school district, requesting the board of school directors to call a special tax election, should be recorded, except perhaps in the minutes of the proceedings had at the meetings of the board.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 114, 115, 117, 240–245, 252; Dec. Dig. ⬤103.]

5. SCHOOLS AND SCHOOL DISTRICTS ⬤103— SPECIAL TAX ELECTION—BALLOTS—REQUISITES.

In an election in which the taxpayers of a school district vote upon a proposition to levy a special tax to build a schoolhouse, it is not necessary that the location of the proposed schoolhouse within the district shall be stated on the ballots. The taxpayers have all the information required when the printed ballots conform with the requirements of the statute under which the election is held.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 114, 115, 117, 240–245, 252; Dec. Dig. ⬤103.]

Appeal from Second Judicial District Court, Parish of Webster; J. N. Sandlin, Judge.

Action by J. Y. Thomas and others against the Board of School Directors of the Parish of Webster. From judgment for defendant, plaintiffs appeal. Affirmed.

Lynn K. Watkins, of Minden, for appellants. Thomas W. Robertson and Stewart & Stewart, all of Minden, for appellee.

O'NIELL, J. This is a suit by three taxpayers of Leton school district No. 25, of the parish of Webster, to annul a special election held on the 15th of July, 1913, at which a 10-mill school tax was authorized to be levied upon all taxable property within the district for five years, and to annul the ordinance of the parish board of school directors, levying the tax.

Judgment was rendered in favor of the defendant, declaring the election proceedings and the tax valid, and the plaintiffs have appealed.

The causes of nullity of the proceedings are alleged to be:

First. That the Act 256 of 1910, as amended in 1912, has more than one object, some of which objects are not expressed in its title; and that therefore it violates article 31 of the Constitution of this state.

Second. That the Act 256 of 1910 is a local and special law, because it does not embrace in its provisions all parts of the state; and

that it therefore violates article 48 of the Constitution, prohibiting the enactment of local or special laws for holding or conducting elections, or regulating the management of public schools, or building or repairing schoolhouses, or raising money for school purposes.

Third. That the statute does not expressly put into effect article 232 of the Constitution, which, without an enabling act, is inoperative.

Fourth. That the Act 256 of 1910, as amended, conflicts with article 49 of the Constitution, prohibiting the enactment of special laws by the repeal of general statutes.

Fifth. That the statute is in conflict with article 48 of the Constitution, prohibiting the Legislature from making corporate bodies and constituting the parish school board a body corporate with the right to form subdivisions of the parish with the right to levy and collect taxes.

Sixth. That notice of the intention to introduce the acts of 1910 and 1912 was not published as is required of local or special laws by article 50 of the Constitution.

Seventh. That the petition of the property taxpayers, requesting the governing authority of the school district to call the special election, was not preserved or recorded.

Eighth. That the petition was not signed by the taxpayers in person nor with their authority, and that the names on the petition do not constitute one-fourth of the property taxpayers of the district.

Ninth. That the resolution of the board, calling the election, did not state the years for which the tax would be levied, nor the total amount to be collected.

Tenth. That the ballots used at the election did not show on their face the location and site of the school building.

Eleventh. That the commissioners and clerk of election were not sworn as required by law.

Twelfth. That no list was kept, nor were any returns made, to show who voted or the result of the election.

Thirteenth. That, if the proceedings were valid, there were enough legal votes against the tax not counted, and enough votes illegally counted in favor of the tax, to change the result; and that the proposition to levy the tax was in reality defeated.

In this connection, it is alleged:

That the vote of John G. Colbert against the tax was arbitrarily reduced from $1,120 to $750, and, after he was permitted to vote the latter sum, his vote was not counted.

That Joe M. Elkins was entitled to vote and offered to vote against the proposition an assessment of $375, but was not permitted to vote; and that he then offered to cast the vote for his wife, Mrs. C. E. Elkins, but, although fully authorized by her, he was not allowed by the commissioners to vote. That Walter Lewis was permitted to vote, and did vote in favor of the tax an assessment of $490, in the name of his wife, without any authority from her; and that Martin Slack voted in favor of the tax an assessment of $170 in the name of Miss S. E. Anderson, without any authority from her.

That the votes cast by T. W. Perkins and John S. Lee in favor of the tax should each be reduced $80 on account of property sold by them before the election.

That I. R. Slack, who voted an assessment of $500 in favor of the tax, was not legally registered, having made his mark to the application to register.

That the name of M. A. Blackwell, who voted an assessment of $360 in favor of the tax, was written on the typewritten list of voters with a pencil by some unknown person, and was not on the certified list.

And that R. N. Lee, who voted an assessment of $720, C. W. Whitaker, who voted an assessment of $630, C. W. Johnson, who voted an assessment of $350, D. F. Shaw, who vot-

ed an assessment of $650, Mont. D. Lee, who voted an assessment of $390, C. C. Lee, who voted an assessment of $400, and J. S. Lee, who voted an assessment of $350, all voting in favor of the tax, were not resident taxpayers of the ·Leton school district.

Fourteenth. That there was no procès verbal made of the recount of the ballots and canvass of the returns by the school board, and therefore none was recorded or filed with the clerk of court or the secretary of state.

Fifteenth. That W. I. Dickinson, Mrs., A. O. Dickinson, and E. D. Kight assessed for property in the district amounting, respectively, to $330, $110, and $430, were opposed to the levy of the tax, but were, by a promise of being put into another district and relieved of the tax, induced not to vote against it.

The defendant, in answer to the suit, denied every material allegation in the petition, and, in a supplemental answer, alleged that J. W. Murrell voted, not only the property assessed to him, but also that belonging to Ben Shockly; and that the property assessed to Nora Lee was not voted by her in person nor by written proxy to any one else; and that these votes were therefore illegally cast and counted against the tax.

## Opinion.

[1] The first contention of the plaintiffs is that the Act 256 of 1910,.as amended by the Acts of 1912, violates article 31 of the Constitution. We assume that the reference to the Acts of 1912 is to Act No. 218 of that year, amending sections 2 and 31, and repealing sections 26 and 29 of Act 256 of 1910.

The title of the statute in question is:

"An act to define the subdivisions of the state; to prescribe the mode and manner of calling, holding, and promulgating the result of elections held therein for the purpose of levying a special tax or forced contribution, or issuing bonds; to provide for the manner of levying and collecting such tax and issuing bonds; to provide the manner of the payment of the interest and principal of such bonds; to fix the limit in which elections may be contested; to make this act applicable to levee districts in certain cases; to provide a penalty for the violation of this act; and to repeal any provisions of municipal charters and all laws, in conflict with this act, and all laws on the same subject, and exempting the city of New Orleans and Parish of Orleans from the operation of this act."

We find no merit in the contention that the statute contains provisions which are not embraced within the object expressed in the title, or that the act has more than one object. A statute which deals with several branches of one and the same subject does not violate the constitutional provision that it shall embrace but one object. Police Jury v. Colomb, 20 La. Ann. 198; Weise v. Thibaut, 34 La. Ann. 556; State v. Brown, 41 La. Ann. 771, 6 South. 638; Board v. Fowler, 50 La. Ann. 1358, 24 South. 809; Gunter v. Dale County, 44 Ala. 639; Bissell v. Heath, 98 Mich. 472, 57 N. W. 585; City of South St. Paul v. Lamprecht, 88 Fed. 449, 31 C. C. A. 585; Cooley's Const. Lim. (7th Ed.) pp. 117–202.

[2] Articles 48, 49, and 50 of the Constitution of this state expressly refer only to local or special laws. The Act 256 of 1910 is not a local or special law. It defines and pertains to all of the subdivisions of the entire state outside of the city of New Orleans, and its provisions relate generally to every subdivision of each class. Hence there is no merit whatever in the second, fourth, fifth, or sixth attack upon the constitutionality of the Act 256 of 1910 as amended by the Act 218 of 1912.

[3] The statute of 1910 put into effect the provisions of article 232 of the Constitution of 1898, providing for the levy of a special tax within a school district or other subdivision of the state. And the title of the act sufficiently expresses that object, without referring to the number of the article of the Constitution.

[4] Referring to the seventh contention made in the plaintiffs' petition, we do not find any requirement, in the Act 256 of 1910

nor in the amending act of 1912, that the petition of the taxpayers, requesting the calling of the election, shall be recorded or preserved in any particular place or manner. The petition of the property taxpayers, in this instance, was preserved and recorded in the minutes of the proceedings of the parish board of school directors, and is in the record before us. We are of the opinion that all the requirements of the law in this respect were complied with.

There is no proof in the record to support the plaintiffs' eighth contention, that the signatures on the petition requesting the school authorities to call the election are not the genuine signatures of the taxpayers whose names appear upon the list certified by the clerk of court. Nor is it true that the petition is signed by less than one-fourth of the property taxpayers. The document and evidence on it show that it is signed by 22 of the 74 taxpayers in the district.

As to the ninth contention, the statute only requires that the resolution calling the election shall state the rate, object, and purpose of the tax, and the number of years it is to run, and, if the proposition be to incur a debt and issue negotiable bonds, the proposition submitted must state the object of the debt, the number of years it is to run, and the rate of interest to be paid thereon. The resolution contained all that was required.

[5] There is no merit in the tenth objection. It was not necessary that the proposed location of the school building should be stated on the ballot. The ballots used are in the form prescribed in section 8 of the statute and gave the voters all the information required by the law.

The clerk and commissioners administered the oath to each other; and, as section 10 of the statute expressly authorizes them to administer the oath, there is no merit in the plaintiffs' contention that the clerk and commissioners were not properly sworn.

The allegation that no list was kept, and that no returns were made, to show who voted or the result of the election, is unfounded in fact.

We come now to the plaintiffs' allegations challenging the correctness of the returns:

John G. Colbert, who was permitted to vote under protest, was a witness for the plaintiffs and testified that he had sold out his business and his household effects and left the parish of Webster six months before the election, with the intention of residing elsewhere permanently, and that he instructed the assessor not to assess him for a poll tax in Webster parish, as he would pay it in the parish into which he had removed. The protest against his voting in this election in Webster parish was therefore properly sustained.

Joe M. Elkins, as a witness for the plaintiffs, testified that he told the commissioners he was authorized verbally by his wife to vote the amount of property assessed to her. He admits that he had no property assessed to him and had no written proxy from his wife. He voted under protest, but there was no assessment stated on his ballot, and it was properly thrown out.

The ballots cast for and in the name of Mrs. G. A. Lewis and of Miss S. E. Anderson do not appear to have been cast by proxy. On each ballot is written the name of the lady and amount of her assessment, and there is no evidence in the record that the votes were not cast by them in person, respectively.

In support of the contention that the votes of T. W. Perkins and John S. Lee should be reduced $80 each, it is shown that each of them sold 40 acres of land in the year 1913 before the election. But it also appears that they continued to be property taxpayers and that their assessment was not reduced. However, these complaints, if sustained, would not affect the result of the election.

I. R. Blackwell was a registered voter, and his ballot was properly counted. It is shown by the testimony of the deputy clerk of court, who made up for the clerk and ex officio register of voters the list of persons entitled to vote, that the name of M. A. Blackwell was omitted from the list by accident. He was a registered voter and taxpayer in the district, and, when it was discovered that his name was omitted from the list, the clerk or deputy clerk of court authorized one of the commissioners of election to add the name to the list.

The record discloses that the school district was regularly enlarged before the election was called, and that R. N. Lee, C. W. Whitaker, C. W. Johnson, D. F. Shaw, M. D. Lee, C. C. Lee, and J. S. Lee, were resident taxpayers of the district.

The procès verbal of the recount of the ballots and canvass of the returns appears in the record, and there is no proof that it has not been recorded in the manner provided by law.

W. E. Dickinson and E. D. Kight, as witnesses for the plaintiffs, testified that they did not offer to vote, because, on the suggestion of Mr. Dickinson, certain persons favoring the tax promised to try to have them put into another district and relieved from the tax. They admit that these parties were in good faith and tried to bring about the change in the district, and that no fraud was practiced upon the taxpayers. It is also shown that the members of the school board made no representations whatever to prevent any taxpayer from voting against the tax and did not persuade any one to vote for the proposition or to refrain from voting against it.

Our conclusion is that the election and all proceedings had in connection therewith were entirely regular and legal and that the tax authorized thereby is valid.

The judgment appealed from is therefore affirmed, at the cost of the appellants.